IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN SHNIPES**<br>         **Plaintiff**<br><br>vs.<br><br>**JOSHUA SHAPIRO, ESQ.,** individually and in his official capacity<br><br>**REBECCA A. ELO, ESQ.,** individually and in her official capacity<br><br>**TROOPER JENNIFER A. KOSAKEVITCH,** individually and in her official capacity<br><br>**SPECIAL AGENT RALPH ZEZZA,** individually and in his official capacity<br><br>**COMMONWEALTH OF PENNSYLVANIA**<br><br>         **Defendants** | Civil Action No.: 2:22-cv-203<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff, John Shnipes alleges as follow:

**I. INTRODUCTION**

1.      The Defendants, including the Attorney General of the Commonwealth of Pennsylvania, knowingly conspired and schemed to subvert and disregard a Non-Prosecution Agreement with the Commonwealth thereby violating Plaintiff, John Shnipes's ("Shnipes") constitutional rights in order to advance political aspirations, going so far as to hold a press conference with news releases related to five year old false sexual assault allegations involving Shnipes. The Court dismissed the bad faith and malicious prosecution of Shnipes describing the Non-Prosecution Agreement as unambiguous and Defendants' criminal investigation/prosecution

of Plaintiff as "meritless". Even after the criminal case ended, the Attorney General, in order to advance his politician ambitions, issued a press release to defame Shnipes's character and blame the former District Attorney of Lackawanna County for the non-prosecution agreement. This action is for declaratory, injunctive and other appropriate relief and is brought by Shnipes to redress the intentional violations by Defendants above named and other of the rights secured to him by the laws of the United States of America.

## I. PARTIES

2. Plaintiff, Shnipes, resides within the county limits of Lackawanna County, Pennsylvania.

3. Defendant, Joshua Shapiro, Esq. ("Shapiro") is the Attorney General of the Commonwealth of Pennsylvania with his office located at 1600 Strawberry Square, 16th Floor, Harrisburg, Pennsylvania 17120. Shapiro is being sued in his individual and official capacity.

4. Defendant, Rebecca A. Elo, Esq. ("Elo") is a licensed attorney in the Commonwealth of Pennsylvania and a Pennsylvania Deputy Attorney General with an office located at the Office of Attorney General, 2305 28th Street SW, Allentown, Pennsylvania 18103. Defendant Elo is being sued in her individual and official capacity.

5. Defendant, Jennifer A. Kosakevitch ("Kosakevitch") is a Pennsylvania State Police Trooper with an address of Pennsylvania State Police Troop R, 85 Keystone Industrial Park Road, Dunmore, Pennsylvania 18512. Defendant Kosakevitch is being sued in her individual and official capacity.

6. Defendant, Ralph Zezza ("Zezza") is a Special Agent with the Pennsylvania Attorney General's Office Bureau of Criminal Investigation with an address of the Office of

General Attorney, 2305 28th SW, Allentown, Pennsylvania 18103. Defendant Zezza is being sued in his individual and official capacity.

7. Defendant, the Commonwealth of Pennsylvania, entered into a Non-Prosecution Agreement with Shnipes. In spite of this, several years later, the Defendants intentionally breached the contract to bring a malicious prosecution against Shnipes.

## II. JURISDICTION

8. Jurisdiction is conferred upon this court by the Fourth, Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983 which provide original jurisdiction for Plaintiff's claims.

9. Jurisdiction over the state law claims is based on the principles of supplemental jurisdiction, as codified at 28 U.S.C. § 1367.

10. The amount in controversy exceeds one hundred and fifty thousand dollars ($150,000).

## III. VENUE

11. All actions complained of herein have taken place within the jurisdiction of the United States District Court for the Middle District of Pennsylvania . Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. § 1391.

## IV. FACTS

**A. The Commonwealth, By and Through its Agents and Employees, Including Defendants, Agrees in Writing on Not To Investigate, Prosecute or File any state law criminal charges against John Shnipes concerning any and all allegations at Lackawanna County Prison**

12. As background, Andrew Jabola, III, the former District Attorney of Lackawanna ("District Attorney Jabola"), in early 2012, empaneled a grand jury investigation into sexual allegations against correctional officers by female inmates at the Lackawanna County Correctional

Facility where Shnipes was employed as a correctional officer. District Attorney Jabola is presently a judge for the Lackawanna County Court of Common Pleas.

13. Although there apparently were a few correctional officers other than Plaintiff who engaged in criminal conduct, Shnipes did not commit any criminal offenses as a correctional officer.

14. Knowing that a viable criminal case could not be brought against Shnipes, District Attorney Jabola contacted Shnipes' counsel to offer a Non-Prosecution Agreement.

15. Shnipes was agreeable to such an agreement in order to avoid the potential media exposure and legal costs that could have incurred. Additionally, although he intended to remain employed as he had a family to support, due to the allegations concerning the Lackawanna County Correctional Facility, the job seemed less desirable for innocent correctional officers as they would be lumped into the reputation of the correction officer(s) who had performed sexual misconduct.

16. On September 24, 2013, District Attorney Jabola entered into a Non-Prosecution Agreement with Shnipes whereby the Commonwealth of Pennsylvania agreed "not to file any state law criminal charges against John Shnipes concerning any and all allegations at Lackawanna County Prison". In return, Shnipes agreed to immediately tender his resignation and forfeit all accrued personal, vacation, and sick time. See Exhibit "A" for a copy of the Non-Prosecution Agreement.

17. The Non-Prosecution Agreement is comprehensive and unambiguous and is a valid contract in which consideration was given.

18. Shnipes fully complied with the Non-Prosecution Agreement.

19. After resigning as a correctional officer, Shnipes ran a successful landscaping and tree removal business for the next several years.

### B. Breach of Contract/Non-Prosecution Agreement and Malicious Prosecution of Shnipes

20.     In 2017, Shapiro became the Attorney General for the Commonwealth of Pennsylvania.  As noted on the Wikipedia page for Shapiro, along with news websites such as whyy.org, Shapiro has long been expected to run for governor.  As part of his aspirations for higher office, Shapiro hoped to shape his image as an Attorney General who prosecuted those who committed public corruption offenses.  As part of this initiative, the Attorney General's office conducted an investigation into prison guards who allegedly abused their authority to sexually abuse female inmates at the Lackawanna County Prison.

21.     During the investigation, in an effort to obtain press coverage on the arrests with as many current and former correctional officers as possible, the Office of the Attorney General, on behalf of the Commonwealth, subverted their own Non-Prosecution Agreement even though Shnipes had relied upon the non-prosecution agreement to his detriment.  During the investigation, the Office of the Attorney General chose to ignore the fact that the Non-Prosecution Agreement was entered into because the government lacked probable cause to bring any charges against Shnipes.   In doing so, Shapiro, along with Elo acting under his direction, were not acting within the scope of their duties as prosecutors.  Rather, Shapiro was acting as a politician to help his political stature as an Attorney General who fights against public corruption to elevate himself for a higher office.

22.     At all times during the investigation, the Defendants knew that any prosecution of Shnipes was illegal and precluded by law.  The Defendants, including Elo working under Shapiro's direction, attempted to obtain and assemble evidence to concoct a reason why the Non-Prosecution Agreement was not enforceable. The Defendants investigated whether the alleged victim of

Shnipes (there was no victim as there was no crime) was notified pursuant to Pennsylvania Crime Victims Act. Although there is no evidence to support their arguments, the Defendants did this so they could argue that the Commonwealth, itself, had committed a wrongdoing by violating the Pennsylvania Crime Victims Act, and therefore, voiding the Non-Prosecution Agreement. As described below, this argument was meritless and not supported by evidence.

23. Also during the investigation, the Defendants used statements from a former inmate with initials J.T., which they knew were false during the grand jury, including false statements obtained by Elo and Kosakevitch during an interview on March 31, 2017. J.T. has a history of making false accusations against correctional officers, which was well known to law enforcement as detailed in the civil complaint in the action, *Paul Voglino v Josh Shapiro, Rebecca Elo, Jennifer Kosakevitch, and Ralph Zezza*. The Defendants failed to disclose the Non-Prosecution Agreement during the grand jury, and instead relied upon statements of J.T., which they knew lacked credibility and failed to disclose evidence showing J.T.'s statements were false.

24. Choosing to disregard the clear and unambiguous language in the Non-Prosecution Agreement executed on September 24, 2013, on February 13, 2018, the Defendants brought criminal charges against Shnipes for alleged sexual misconduct based on allegations made by female inmates at Lackwanna County Prison, which the Defendants knew to be false. The charges included involuntary deviate sexual intercourse, aggravated indecent assault/ threat through forcible compulsion, institutional sexual assault, and harassment. The affidavit of probable cause was signed by Kosakevitch and Zezza. Elo was the Deputy Attorney General who handled the case against Shnipes and who, under Shapiro's knowledge and direction, approved the baseless criminal complaint against Shnipes.

25. The next day, which was Valentine's Day, Shnipes was arrested at his home in front of his wife and children. Shnipes posted bailed and later retained legal counsel. Law enforcement notified the media so that there would be news coverage of Shnipes being taken from his home in handcuffs by the police. Shnipes was wearing a shirt bearing the name of his business when he was made to take the "perp walk" from his home.

26. On February 14, 2018, Shapiro held a news conference to announce the arrest of current and former correctional officers, including Shnipes. The arrest of Shnipes was reported in the media and his mug shot was posted, including on the website of the Attorney General. Shapiro claimed, "these correction officers [including Shnipes] repeatedly used their positions of power to solicit sex and abuse female inmates." Although the law precluded the prosecution of Snipes, Shapiro informed the public that his office would prosecute the arrested correctional officers, including Shnipes, to the fullest extent of the law. Defendants Elo and Zezza accompanied Shapiro at the press conference.

27. The investigation, arrests and press conference were intended to enhance Shapiro's political stature.

28. The Defendants refused to withdraw or dismiss the criminal complaint even after Shnipes filed a motion to dismiss based on the Non-Prosecution Agreement.

29. On February 6, 2020, Court of Common Pleas of Lackawanna County dismissed all charges against Shnipes. The Honorable Jeffrey Smith authored an opinion on this case detailing why the charges were dismissed. As per the opinion, "the court finds that the non-prosecution agreement reached by the parties is neither indefinite nor ambiguous. The Non-Prosecution Agreement that charges will not be filed "concerning any and all allegations" at the Lackawanna County Prison is, on its face, comprehensive and unambiguous." The Court further

held that "the various challenges the Commonwealth makes to the non-prosecution agreement are not supported by the evidence presented to the court. Defendant's motion to dismiss must be granted."

30. In contesting the motion to dismiss, the Defendants argued that the alleged victim was not notified of the Non-Prosecution Agreement, and therefore, the agreement was executed in violation of the Pennsylvania Crime Victims Act, which according to the Defendants invalidated the Agreement.

31. The Court stated that this argument was "meritless". Not only was there no evidence that supported the argument that there was no notice, as noted by the Court, but the Defendants attempted "to rely on its own wrongful act as justification to undo that very act."

32. As evident, the arrest and prosecution of Shnipes lacked probable cause and was a clear and intentional breach of contract. At all times, the Defendants knew that a criminal conviction could not be obtained against Shnipes for any alleged offense pertaining to his tenure as a correctional officer. Rather, the purpose of the arrest and prosecution was not to obtain a conviction, but to damage Shnipes' reputation and to advance Shapiro's political image as an Attorney General who was fighting public corruption.

33. The Fourteenth Amendment to the United States Constitution and Article 1 Section 9 of the Pennsylvania Constitution mandate that all interactions between the government and the individual are conducted in accordance with the protections of due process. When the government agrees to not prosecute an individual and the individual relies upon that to his/her detriment, the government violates that individual's due process right when bringing a criminal action in violation of the agreement.

34. Shnipes relied upon the Non-Prosecution Agreement and resigned from his job and forfeited his earned employee benefits as part of the agreement. Nonetheless, the Defendants intentionally violated his constitutional rights for political purposes.

C. **Post Criminal Action Press Release of Shapiro Intending to Harm Shnipes's Reputation**

35. After the Court of Common Pleas of Lackawanna County dismissed all charges against Shnipes, the Defendants appealed the decision to the Superior Court of Pennsylvania. However, the Defendants withdrew the meritless appeal on August 20, 2021.

36. After the Defendants moved to withdraw the appeal and end the criminal case against Shnipes, Shapiro and his office issued a written statement for the press, which was then widely reported (which was the intended purpose of the press release). The press release stated, "As a result of this agreement made 8 years ago, prior to a full investigation into Mr. Shnipes' criminal conduct, our office sees no way forward in achieving accountability for this defendant and justice for his victims."

37. As evident from this press release, Shapiro and his office stated that Shnipes had engaged in criminal conduct and that his conduct caused harm to numerous "victims". This statement was made outside of the scope of Shapiro's official duties as Attorney General and the statement was not related to an active or ongoing criminal case or conviction.

38. At the time the statement was made, the criminal case was over. As such, there was no mechanism for Shnipes to contest the false and malicious statements made in the press release.

39. Rather, the statement was a combination of "sour grapes" and grandstanding. Although criminal defendants are presumed innocent until proven guilty, in attempting to advance

his political image as an Attorney General who was fighting against public corruption, Shapiro called Shnipes a criminal and attempted to cast blame on District Attorney Jabola for the Non-Prosecution Agreement.

40. Not only did Shapiro's press release falsely state that Shnipes was a criminal whose deviate sexual conduct left numerous victims, but it should be noted that of the seven (7) correctional officers arrested on February 14, 2018 (which includes Shnipes), four (4) of the cases ended with the charges being withdrawn, dismissed or acquittals. At the time of the press release, Shapiro and his office knew that much of the alleged evidence was false and non-credible.

41. Shapiro's statement, which imputes serious sexual misconduct, is defamation per se.

42. Several weeks after the press release, Shapiro announced his candidacy for governor in October 2021.

43. The conduct of the Defendants was willful, wanton, intentional, in bad faith and calculated to cause violations of rights secured to Shnipes by the laws of the United States of America warranted the imposition of punitive as well as compensatory damages against them. Shapiro held supervisory authority over all of the other Defendants named herein.

44. Shnipes was harmed and damaged due to the Defendants' actions, including the civil rights violations and defamatory statements. The harm includes, but is not limited to, being forced to pay money for legal counsel to defend himself and secure a dismissal of the bad faith charges, which forced him to take out an additional mortgage on his home. His reputation was harmed by the defamatory press release and the media exposure surrounding the bad faith and meritless criminal case brought against him and the post criminal case press release, which

included, but was not limited to his business being damaged as he lost business and clients who were falsely led to believe that Shnipes was a criminal who sexually abused inmates.

45. In addition to seeking compensatory and punitive damages, Shnipes seeks declaratory relief in the form of an injunction prohibiting Shapiro from calling Shnipes a criminal or stating that he had committed criminal acts.

## V. CAUSES OF ACTION

### COUNT I
### PLAINTIFF V. ALL DEFENDANTS
### MALICIOUS PROSECUTION under 42 U.S.C. 1983

46. Plaintiff incorporates by reference herein as though recited verbatim at length the allegations of the preceding paragraphs.

47. Defendants instituted criminal proceedings against Plaintiff without probable cause and with malice, in violation of Plaintiff's constitutional rights.

48. The criminal proceedings were terminated in favor of Plaintiff.

49. Defendants knew that the criminal charges against Plaintiff could not be sustained and lacked merit.

50. Defendants acted maliciously and with a reckless disregard for and deliberate indifference to Plaintiff's Constitutional rights and for a purpose other than obtaining a criminal conviction.

51. As a direct and proximate result of the actions of Defendants, Plaintiff was falsely held against his will, expended monies including attorneys' fees in defense of the criminal charges against him, suffered irreparable harm to his reputation and was damaged in operating his business.

52. Plaintiff was also deprived of his liberty, which included, but not limited to, being

arrested, being forced to post bond to be released from custody, complying with the requirements of the bond, and a requirement to attend court appearances.

53. The actions of Defendant aforesaid constitute malicious prosecution, in violation of Plaintiffs' Fourth, Fifth and Fourteenth Amendment rights.

WHEREFORE, Plaintiff respectfully requests this Honorable Court:

    a. Enter a declaratory judgment that Defendant's acts complained of herein have violated and continue to violate the rights of Plaintiff.

    b. Award Plaintiff compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

    c. Award reasonable costs and attorneys' fees;

    d. Award punitive damages; and

    e. Grant any other relief this Court deems just and proper under the circumstances.

## COUNT II
## PLAINTIFF V. ALL DEFENDANTS
## MALICIOUS USE AND ABUSE OF PROCESS under 42 U.S.C. 1983

54. Plaintiff incorporates by reference herein as though recited verbatim at length the allegations of the preceding paragraphs.

55. Defendants instituted criminal proceedings against Plaintiff without probable cause and with malice, in violation of Plaintiff's constitutional rights.

56. Defendants instituted criminal proceedings and thereby used the legal process

against Plaintiff primarily to politically grand stand and obtain positive media coverage, a cause for which it was not designed, and as a result clearly harmed Plaintiff.

57. The criminal proceedings were terminated in favor of Plaintiff.

58. Defendants knew that they were using the judicial process for no other reason than self gain as they knew that criminal charges against Plaintiff could not be sustained in light of the Non-Prosecution Agreement and lack of probable cause.

59. Defendants knew that the criminal charges against Plaintiff could not be sustained.

60. Defendants acted maliciously and with a reckless disregard for and deliberate indifference to Plaintiff's Constitutional rights and for a purpose other than obtaining a criminal conviction.

61. As a direct and proximate result of the actions of Defendants, Plaintiff was falsely held against his will, expended monies including attorneys' fees in defense of the criminal charges against him, suffered irreparable harm to his reputation and was damaged in operating his business.

62. Defendants acted maliciously and with a reckless disregard for and deliberate indifference to Plaintiff's Constitutional rights and for a purpose other than obtaining political and career advancement.

63. As a direct and proximate result of the actions of Defendants, Plaintiff was falsely held against his will, expended monies including attorneys' fees in defense of the criminal charges against him, suffered irreparable harm to his reputation and was damaged in operating his business.

64. Plaintiff was also deprived of his liberty, which included, but not limited to, being arrested, being forced to post bond to be released from custody, complying with the requirements

of the bond, and a requirement to attend court appearances.

65. The actions of Defendant aforesaid constitute abuse and misuse of process, in violation of Plaintiffs' Fourth, Fifth and Fourteenth Amendment rights.

WHEREFORE, Plaintiff respectfully requests this Honorable Court:

a. Enter a declaratory judgment that Defendant's acts complained of herein have violated and continue to violate the rights of Plaintiff.

b. Award Plaintiff compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

c. Award reasonable costs and attorneys' fees;

d. Award punitive damages; and

e. Grant any other relief this Court deems just and proper under the circumstances.

## COUNT III
## PLAINTIFF V. ALL DEFENDANTS
## COMMON LAW MALICIOUS PROSECUTION

66. Plaintiff incorporates by reference herein as though recited verbatim at length the allegations of the preceding paragraphs.

67. Defendants instituted criminal proceedings against Plaintiff without probable cause and with malice, in violation of Plaintiff's constitutional rights.

68. The criminal proceedings were terminated in favor of Plaintiff.

69. Defendants knew that the criminal charges against Plaintiff could not be sustained.

70. Defendants acted maliciously and with a reckless disregard for and deliberate indifference to Plaintiff's Constitutional rights and for a purpose other than obtaining a criminal conviction.

71. As a direct and proximate result of the actions of Defendants, Plaintiff was falsely held against his will, expended monies including attorneys' fees in defense of the criminal charges against him, suffered irreparable harm to his reputation and was damaged in operating his business. The actions of the Defendants resulted in existing and prospective customers not hiring Plaintiff and his business.

72. Plaintiff was also deprived of his liberty, which included, but not limited to, being arrested, being forced to post bond to be released from custody, complying with the requirements of the bond, and a requirement to attend court appearances.

73. The actions of Defendant aforesaid constitute malicious prosecution, in violation of Plaintiffs' Fourth, Fifth and Fourteenth Amendment rights.

WHEREFORE, Plaintiff respectfully requests this Honorable Court:

    a. Enter a declaratory judgment that Defendant's acts complained of herein have violated and continue to violate the rights of Plaintiff.

    b. Award Plaintiff compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

    c. Award reasonable costs and attorneys' fees;

      d.      Award punitive damages; and

      e.      Grant any other relief this Court deems just and proper under the circumstances.

## COUNT IV
## PLAINTIFF V. DEFENDANTS
## COMMON LAW MALICIOUS USE AND ABUSE OF PROCESS

74. Plaintiff incorporates by reference herein as though recited verbatim at length the allegations of the preceding paragraphs.

75. Defendants instituted criminal proceedings and thereby used the legal process against Plaintiff primarily to politically grand stand and obtain positive media coverage, a cause for which it was not designed, and as a result clearly harmed Plaintiff.

76. The proceedings were terminated in favor of Plaintiff.

77. Defendants knew that they were using the judicial process for no other reason than self gain as they knew that criminal charges against Plaintiff could not be sustained in light of the Non-Prosecution Agreement and lack of probable cause.

78. Defendants acted maliciously and with a reckless disregard for and deliberate indifference to Plaintiff's Constitutional rights and for a purpose other than obtaining political and career advancement.

79. As a direct and proximate result of the actions of Defendants, Plaintiff was falsely held against his will, expended monies including attorneys' fees in defense of the criminal charges against him, suffered irreparable harm to his reputation and was damaged in operating his business.

80. Plaintiff was also deprived of his liberty, which included, but not limited to, being

arrested, being forced to post bond to be released from custody, complying with the requirements of the bond, and a requirement to attend court appearances.

81. The actions of Defendant aforesaid constitute abuse and misuse of process, in violation of Plaintiffs' Fourth, Fifth and Fourteenth Amendment rights.

WHEREFORE, Plaintiff respectfully requests this Honorable Court:

a. Enter a declaratory judgment that Defendant's acts complained of herein have violated and continue to violate the rights of Plaintiff.

b. Award Plaintiff compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

c. Award reasonable costs and attorneys' fees;

d. Award punitive damages; and

e. Grant any other relief this Court deems just and proper under the circumstances.

### COUNT V
### PLAINTIFF V. ALL DEFENDANTS
### TORTIOUS INTERFERENCE WITH CONTRACT

82. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

83. Plaintiff entered into a contract with District Attorney Jabola of Lackawanna County and the Commonwealth of Pennsylvania. Pursuant to the contract, the Commonwealth agreed "not to file any state law criminal charges against John Shnipes concerning any and all allegations at Lackawanna County Prison". In return, Shnipes agreed to immediately tender his

resignation and forfeit all accrued personal, vacation, and sick time. Shnipes complied with all terms of the contract.

84. The Defendants intentionally and improperly interfered with the performance of the contract. The Defendants intentionally and improperly interfered and caused the Commonwealth of Pennsylvania to not perform its obligations and caused the Commonwealth to breach its duties and obligations under the contract.

85. The actions of the Defendants were not justified. As noted in detail above, Defendants including Shapiro interfered with the contract in order to advance political aspirations.

86. The Defendants conduct caused pecuniary damages to the Plaintiff and his business, including causing existing and prospective customers to not hire Plaintiff and his business. Do to the breach, Defendants should pay Plaintiff for all the compensation and benefits he lost in complying with the contract.

WHEREFORE, Plaintiff respectfully requests this Honorable Court award Plaintiff compensatory damages and grant any other relief this Court deems just and proper under the circumstances.

### COUNT VI
### PLAINTIFF V. JOSH SHAPIRO
### DEFAMATION

87. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

88. Shapiro post criminal case press release falsely stated that Shnipes was a criminal whose deviate sexual conduct left numerous victims.

89. Shapiro's statement was done intentionally and with malice.

90. Shapiro's statement damaged Shnipes' reputation and damages his business.

91. Shapiro's statement is defamation per se.

WHEREFORE, Plaintiff respectfully requests this Honorable Court:

b. Award Plaintiff compensatory damages including but not limited to: lost of reputation, past economic loss, future economic loss, emotional distress and other damages;

c. Award reasonable costs and attorneys' fees;

d. Award punitive damages; and

e. Grant any other relief this Court deems just and proper under the circumstances.

## COUNT VII
## PLAINTIFF V. ALL DEFENDANTS
## BREACH OF CONTRACT

92. Plaintiff entered into a contract with District Attorney Jabola of Lackawanna County and the Commonwealth of Pennsylvania. Pursuant to the contract, the Commonwealth of Pennsylvania agreed "not to file any state law criminal charges against John Shnipes concerning any and all allegations at Lackawanna County Prison". In return, Shnipes agreed to immediately tender his resignation and forfeit all accrued personal, vacation, and sick time. Shnipes complied with all terms of the contract. The contract included adequate consideration. A copy of the contract is attached.

93. Defendants intentionally breached the aforementioned agreement by investigating and prosecuting Plaintiff in violation of the agreement.

94. As a direct result of Defendants' intentional breach of contract, Plaintiff incurred damages in paying for legal fees and costs in enforcing the agreement and obtaining a dismissal of the criminal proceedings, reputational damage and business interruption and lost revenue. Do to

the breach, Defendants should pay Plaintiff for all the compensation and benefits he lost in complying with the contract.

WHEREFORE, Plaintiff respectfully requests this Honorable Court award Plaintiff compensatory damages and grant any other relief this Court deems just and proper under the circumstances.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/Joseph P. Guzzardo, Esq.*
Joseph P. Guzzardo, Esq.
Counsel for Plaintiff
Guzzardo & Associates LLC
121 S. Broad Street, Suite 1600
Philadelphia, PA 19107
jguzzardo@guzzardolaw.com
215-718-6691

*/s/Matthew Moroney, Esq.*
Mathew Moroney, Esq.
Goldberg, Miller & Rubin, P.C.
Counsel for Plaintiff
121 S. Broad Street, Suite 1600
Philadelphia, PA 19107
mmoroney@gmrlawfirm.com
215-735-3994