## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JOHN SHNIPES,

                Plaintiff,

      v.

JOSHUA SHAPIRO, ESQ., et al.,

                Defendants.

CIVIL ACTION NO. 3:22-CV-196

(MEHALCHICK, M.J.)

### MEMORANDUM

Before the Court is a motion to dismiss and a motion to stay discovery filed by Defendants the Commonwealth of Pennsylvania ("the Commonwealth"), former Attorney General Joshua Shapiro ("Shapiro"), Deputy Attorney General Rebecca A. Elo ("Elo"), Pennsylvania State Trooper Jennifer A. Kosakevitch ("Kosakevitch"), and Special Agent for the Attorney General's Office Ralph Zezza ("Zezza") (collectively, "Defendants"). (Doc. 6; Doc. 29). On February 2, 2022, Plaintiff John Shnipes ("Shnipes") commenced the instant action by filing a complaint against Defendants asserting claims under state law and 42 U.S.C 1983. (Doc. 1).  The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 28).

For the following reasons, Defendants' motions to dismiss shall be **GRANTED** in part and **DENIED** in part. (Doc. 6). Defendants' motion to stay is **DENIED**. (Doc. 29).

### I.    BACKGROUND AND PROCEDURAL HISTORY

On February 2, 2022, Shnipes commenced the instant action by filing a complaint against Defendants. (Doc. 1). In the complaint, Shnipes sets forth the following causes of action: malicious prosecution under 42 U.S.C § 1983 and common law against all Defendants (Counts I; III); malicious use and abuse of process under 42 U.S.C § 1983 and common law

against all Defendants (Counts II; IV); a state law claim for tortious interference with contract against all Defendants (Count V); a state law defamation claim against Shapiro (Count VI); and a breach of contract claim against all Defendants (Count VII). (Doc. 1). For relief, Shnipes requests declaratory judgment, compensatory damages, punitive damages, attorneys' costs and fees, and "any other relief this Court deems just and proper under the circumstances." (Doc. 1, ¶¶ 53, 65, 73, 81, 86, 91).

On April 18, 2022, Defendants moved to dismiss Count I-VII for failure to state a claim. (Doc. 6). On May 16, 2022, with leave of Court, Defendants filed a brief in support of their motion to dismiss with corresponding exhibits. (Doc. 9; Doc. 11). On June 14, 2022, Shnipes filed a brief in opposition to Defendants' motion to dismiss, with leave of Court. (Doc. 14; Doc. 17). On July 12, 2022, with leave of Court, Defendants filed a reply brief to Defendants' motion to dismiss, with corresponding exhibits. (Doc. 19; Doc. 20).

On September 8, 2023, Defendants filed a motion to stay discovery pending close of pleadings. (Doc. 29). Shnipes filed a brief in opposition to Defendants' motion to stay discovery on September 20, 2023. (Doc. 32). Defendants filed their brief in support of their motion to stay discovery on September 22, 2023. (Doc. 33). The Court conducted oral argument concerning the pending motion to dismiss and motion to stay on September 25, 2023. (Doc. 30). The motion to dismiss and the motion to stay are now ripe for disposition.[1] (Doc. 6; Doc. 11; Doc. 17; Doc. 20; Doc. 29; Doc. 32; Doc. 33).

---

[1] Shnipes alleges "Defendants are in default as an answer or motion was not filed in a timely manner." (Doc. 17, at 14). "[E]ntry of default is not an automatic function, but is contingent upon the fulfillment of several requirements, one of which per Rule 55(a), is that a request for entry of default must be accompanied by an affidavit by the plaintiff requesting entry of default." *Curran v. Carbon Spyder, LLC*, No. 1:11-cv-2127, 2015 WL 7769237, at *2 n.3 (M.D.Pa., Nov. 9, 2015) (citing Fed. R. Civ. P. 55). As Defendants filed their motion to dismiss before any responsive pleading, the Court considers their motion timely. *See Aetna*

II.   **STANDARD OF LAW**

A.   MOTION TO DISMISS

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions…'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat*

*Life Ins. Co. v. Alla Medical Servs., Inc.*, 855 F.2d 1470, 1474 (9th Cir.1988) (concluding that a motion may be deemed timely under 12(b) any time before the responsive pleading is filed).

*Factory Sec. Litig.,* 114 F.3d 1410, 1429-30 (3d Cir. 1997)). The court also need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347. The Third Circuit has further instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

B.    SECTION 1983

To state a claim under section 1983, a plaintiff must meet two threshold requirements. She must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, she was deprived of rights, privileges, or immunities

4

secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42 (1988); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). If a defendant fails to act under color of state law when engaged in the alleged misconduct, a civil rights claim under section 1983 fails as a matter of jurisdiction, *Polk Cty. v. Dodson*, 454 U.S. 312, 315 (1981), and there is no need to determine whether a federal right has been violated. *Rendell–Baker v. Kohn*, 457 U.S. 830, 838 (1982).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988); *see also Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003) (citing *Rode*, 845 F.2d at 1207). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207; *accord Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293-96 (3d Cir. 1997); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995). As explained in *Rode*:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

> *Rode*, 845 F.2d at 1207.

With respect to punitive damages for a § 1983 violation, this remedy is only available "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30 (1983). Regarding federal civil rights claims, "reckless indifference" refers to the defendant's knowledge of the illegality of his actions, not the egregiousness of his

actions. *Alexander v. Riga*, 208 F.3d 419, 431 (3d Cir. 2000) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999)).

### III.  DISCUSSION

#### A.  OFFICIAL CAPACITY CLAIMS

Defendants move to dismiss Shnipes' claims against each Defendant in their official capacity as barred by the Eleventh Amendment. (Doc. 11, at 18-19). Shnipes does not oppose this argument in his reply brief. (Doc. 17). Because the Eleventh Amendment "bars a suit against state officials in their official capacity," all claims asserted against Defendants in their official capacity are barred. *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990), *aff'd,* 502 U.S. 21 (1991); *see also Woodring v. Republican Caucus of Pennsylvania House of Representatives*, No. 1:18-CV-1158, 2019 WL 1383633, at *8 (M.D. Pa. Mar. 27, 2019) (asserting "common law tort claims and contract claims are [ ] barred by sovereign immunity"). Accordingly, claims against Defendants in their official capacity are **DISMISSED** with prejudice.[2] *See Melo*, 912 F. 2d at 635.

#### B.  PROSECUTORIAL IMMUNITY OF ELO

Defendants move to dismiss claims against Defendant Elo, arguing that prosecutorial immunity protects her from liability for actions taken in her capacity as a prosecutor. (Doc.

---

[2] Further, all claims against the Commonwealth are dismissed. The Commonwealth "has not waived its immunity in § 1983 civil rights cases." *O'Hara v. Ind. Univ. of Pa.*, 171 F. Supp. 2d 490, 495 (W.D. Pa. 2001). Likewise, damage claims arising under state law against the Commonwealth are barred by the Eleventh Amendment. *Draucker v. Pennsylvania*, No. 1:23-CV-1022, 2023 WL 4137482, at *3 n.2 (M.D. Pa. June 22, 2023). The court may dismiss claims based on immunity if the immunity is clear on the face of the complaint. *Weimer v. Cty. of Fayette, Pennsylvania*, 972 F.3d 177, 187 (3d Cir. 2020) ("a defendant must show that the conduct triggering [] immunity 'clearly appear[s] on the face of the complaint'") (citing *Fogle v. Sokol*, 957 F.3d 148, 161 (3d Cir. 2020)). Accordingly, all claims against the Commonwealth are **DISMISSED** with prejudice.

6

11, at 19-20). Shnipes submits that prosecutorial immunity does not shield Elo because the acts relevant to his claims, including interviewing a grand jury witness with police and investigating the enforceability of the non-prosecution agreement, are "more closely aligned with the ordinary work performed by police," than that of a prosecutor. (Doc. 17, at 27). "A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as "preparation" for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial." *Buckley v. Fitzsimmons*, 509 U.S. 259, 276 (1993); *see also Fogle v. Sokol*, 957 F.3d 148, 163-64 (3d Cir. 2020) (finding a prosecutor was not protected by prosecutorial immunity for "investigatory conduct" including collecting witness statements, working with police, and obtaining fabricated evidence). Taking the allegations in Shnipes's complaint as true for the purpose of a motion to dismiss, the Court declines to apply prosecutorial immunity to Elo at this point in the proceedings.  As there are clear issues of material fact surrounding whether Elo was acting more as an investigator or a prosecutor in connection with the claims against her, the applicability of prosecutorial immunity would be better decided later in this litigation. *See Stevens v. Sullum*, No. CV 3:20-1911, 2021 WL 2784817, at *5 (M.D. Pa. July 2, 2021) (deciding claims against prosecutors were not precluded by prosecutorial immunity for the purpose of a motion to dismiss because there were issues of material fact relating to the nature of the prosecutors' acts).

C.    COUNTS I AND III: MALICIOUS PROSECUTION

Counts I and III assert § 1983 and common law claims for malicious prosecution against all Defendants. (Doc. 1, ¶¶ 46-53, 66-73). To prevail on a malicious prosecution claim

asserted pursuant § 1983 and under state law, Shnipes must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; [and] (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice." *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)); *see Hilfirty v. Shipman*, 91 F.3d 573, 579 (3d Cir. 1996)). For the malicious prosecution claim asserted under § 1983, there is an additional constitutional component requiring Shnipes to show a loss of liberty beyond simply showing an unlawful arrest. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 792 (3d Cir. 2000).

Defendants move to dismiss Shnipes's malicious prosecution claim on the basis that he failed to allege the absence of probable cause. (Doc. 11, at 13). In opposition, Shnipes asserts that the question of probable cause is one for the jury and that Defendants knew they did not have probable cause to press charges against Shnipes but nonetheless knowingly relied on false witness statements to secure an indictment (Doc. 17, at 12, 15, 16).

"Probable cause exists when 'the facts and circumstances within the [defendant's] knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed.'" *Stetser v. Jinks*, 572 F. App'x 85, 87 (3d Cir. 2014) (quoting *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990)). "While 'the probable-cause standard is incapable of precise definition or quantification,' all interpretations of probable cause require a belief of guilt that is reasonable, as opposed to certain." *Halsey v. Pfeiffer*, 750 F.3d 273, 299 (3d Cir. 2014) (quoting *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005) (additional internal citations and quotations omitted)). Generally, the existence of probable cause is a factual issue for the jury, and a court should "exercise caution before

granting a defendant summary judgment in a malicious prosecution case when there is a question of whether there was probable cause for the initiation of the criminal proceeding." *Halsey*, 750 F.3d at 300; *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir.1998).

When determining probable cause, officers are not typically required to analyze the credibility of the evidence they rely upon. *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d. Cir. 2016); *Eckman v. Lancaster City*, 529 F. App'x 185, 187 (3d Cir. 2013); *Stafford v. Morris*, 816 F. App'x 712, 717 (3d Cir. 2020). However, probable cause does not exist when substantial evidence of a witness' own unreliability outweighs the probable cause that otherwise exists. *See Dempsey*, 834 F.3d at 479. Shnipes contends Defendants knowingly used false witness statements before and during grand jury proceedings from a witness they knew "has a history of making false accusations against correctional officers. . ." (Doc 1, ¶ 23). Taking these allegations as true for the purpose of a motion to dismiss, Shnipes has sufficiently alleged an absence of probable cause. *See Crosland v. City of Philadelphia*, No. CV 22-2416, 2023 WL 3898855, at *10 (E.D. Pa. June 8, 2023) (declining to dismiss a malicious prosecution claim because the relevant affidavit was "thinly sourced" with unreliable witness' statements.); *see also Brazil v. Scranton School Board, et al.*, 2023 WL 5916470, at *9 (M.D. Pa. Sept. 11, 2023) (denying a motion to dismiss a malicious prosecution claim because the complaint asserted probable cause was based on known "false information.").[3] For the

---

[3] The parties also disagree about the relevance of the non-prosecution agreement for probable cause. (Doc. 11, at 12-13; Doc. 17, at 17). Shnipes alleges Defendants knew there was no probable cause to bring criminal charges against him because they had knowledge of the non-prosecution agreement. (Doc. 1, ¶ 21-22; Doc. 17, at 15). Defendants argue the non-prosecution agreement was irrelevant to the issue of probable cause and instead an affirmative defense. (Doc. 11, at 12-13). Taking Defendants' argument as true and stipulating the non-prosecution agreement was irrelevant, the facts alleged in the complaint still sufficiently provide for a lack of probable cause. (Doc. 1, ¶ 21-22). Thus, because analysis of the non-

aforementioned reasons, Defendants' motion to dismiss Shnipes's malicious prosecution claims against Defendants is **DENIED**.

    D.    COUNTS II AND VII: MALICIOUS ABUSE OF PROCESS

Counts II and IV allege causes of action for malicious abuse of process under 42 U.S.C § 1983 and state law.[4] (Doc. 1, ¶¶ 54-65, 74-81). "[A] section 1983 claim for malicious abuse of process lies where 'prosecution is [. . .] used for a purpose other than that intended by the law.'" *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989) (quoting *Jennings v. Shuman*, 567 F.2d 1213, 1217 (3d Cir. 1977)). However, "there is no cause of action for abuse of process if the claimant, even with bad intentions, merely carries out the process to its authorized conclusion." *Cameron v. Graphic Mgmt. Assocs.*, 817 F. Supp. 19, 21 (E.D. Pa. 1992). Instead, there must be a showing of perversion. *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 304 (3d Cir. 2003). The Third Circuit has defined "perversion" as a use of legal process "primarily to accomplish a purpose for which the process was not defined" such that it "caused harm to the plaintiff." *Gen. Refractories Co.*, 337 F.3d at 304.

Defendants submit that Shnipes's malicious abuse of process claim is precluded by the statute of limitations, which they posit to be one year. (Doc. 11, at 15). However, for actions brought pursuant to § 1983, federal courts apply the state's statute of limitations for personal

---

prosecution agreement is inconsequential at this juncture, the Court declines to opine on the nature of the non-prosecution agreement.

[4] In conjunction with his malicious abuse of process claim, Shnipes also raises "malicious use of process." (Doc. 1, ¶¶ 54-65). "Malicious use of process" is used interchangeably with "malicious prosecution" in Pennsylvania. *Occhipinti v. Bauer*, No. 3:13-CV-1875, 2017 WL 3495182, at *12 n.8 (M.D. Pa. Aug. 14, 2017); *see also Baird v. Aluminum Seal Co.*, 250 F.2d 595, 602 (3d Cir. 1957); *see also Harvey v. Pincus*, 549 F. Supp. 332, 340 (E.D. Pa. 1982), aff'd, 716 F.2d 890 (3d Cir. 1983).

injury. *Sameric Corp. of Delaware v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998). Pennsylvania's statute of limitations for personal injury is two years. 42 Pa. Cons. Stat. § 5524. Thus, for a malicious abuse of process claim asserted under 42 U.S.C. § 1983, the statute of limitations is two years. *Moody v. Conroy*, 680 F. App'x 140, 142 (3d Cir. 2017). A malicious abuse of process claim accrues on the date of arrest, as that is the date a plaintiff would know of the injury. *Rose v. Bartle*, 871 F.2d 331, 350 (3d Cir. 1989) (citing *Deary v. Three Un-Named Police Officers*, 746 F.2d 185, 197 (3d Cir. 1984)) (a § 1983 claim for abuse of process "accrues on the date of the arrest, as does a because on that date a plaintiff 'would have reason to know of the injury which [the tort] encompass[es].'"); *see also Adkins v. Cnty. of Erie, Pennsylvania*, No. CV 21-132, 2022 WL 16717546, at *2 (W.D. Pa. Nov. 4, 2022) (dismissing an untimely abuse of process claim by applying the two-year statute of limitations).

Shnipes initiated this action on February 2, 2022. (Doc. 1). Shnipes was arrested on February 14, 2018. (Doc 1, ¶ 25). Because Shnipes's arrest date is more than two years from when he filed his complaint, his malicious abuse of process claims are time-barred and as such are **DISMISSED** with prejudice.

E.    <span style="text-transform: uppercase">Count V: Tortious Interference with Contract</span>

Count V asserts a state law claim for tortious interference with contract against all Defendants. (Doc. 1, ¶¶ 82-86). "Under Pennsylvania law, to prevail on a claim for tortious interference with existing ... contractual relationships, a party must prove: (1) the existence of a contractual ... or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship ...; (3) the absence of privilege or justification on the part of the defendant; [and] (4) legal damage to the plaintiff as a result of the defendant's conduct...." *Acumed LLC v. Advanced Surgical Servs.,*

*Inc.*, 561 F.3d 199, 212 (3d Cir. 2009) (citing *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 530 (3d Cir. 1998)). Defendants move to dismiss Shnipes's tortious interference with contract claim as barred by sovereign immunity. (Doc. 11, at 16). Shnipes alleges sovereign immunity does not apply because "Defendants, in their individual capacity, in an effort to help Shapiro's political aspirations, purposefully acted to interfere with that contract by arresting and prosecuting that contract." (Doc. 17, at 21).

Pennsylvania law is clear that Commonwealth employees enjoy sovereign immunity against state law claims, including tortious interference with contract. 1 Pa. Stat. and Cons. Stat. § 2310; *see Semian v. Dep't of Mil. & Veterans' Affs. - Gino J. Merli Veterans Ctr.*, No. 3:17-CV-1183, 2018 WL 4038116, at *6-7 (M.D. Pa. Aug. 23, 2018) (dismissing a tortious interference claim barred by sovereign immunity). This protection extends to intentional torts committed by state employees acting in their individual capacities so long as they are acting within the scope of their employment. *Marrow v. Lawler*, No. 1:19-CV-1690, 2020 WL 4903837, at *5 (M.D. Pa. Aug. 20, 2020); *Larsen v. State Emps' Ret. Sys.*, 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008). "Under Pennsylvania law, even unauthorized acts may be within the scope of employment 'if they are clearly incidental to the master's business.'" *Brumfield v. Sanders*, 232 F.3d 376, 381 (3d Cir. 2000) (quoting *Shuman Estate v. Weber*, 419 A.2d 169, 216 (Pa. Super. 1980)).

Here, each remaining Defendant named is a state employee. (Doc. 1, ¶¶ 3, 4, 5, 6). Shnipes alleges Defendants intentionally interfered with his contract with the Commonwealth by pursuing charges against him. (Doc. 1, ¶ 84). On the face of the complaint, Defendants' alleged interference with the non-prosecution agreement was "clearly incidental to [their] master's business." (Doc. 1); *Brumfield*, 232 F.3d at 381. Investigating the charges against

Shnipes and pursuing prosecution against him are both acts within the scope of each Defendants' employment, regardless of the non-prosecution agreement or Defendants' alleged motivation "to advance [Shapiro's] political aspirations."[5] (Doc. 1, ¶ 85); *see Brumfield, 232 F.3d at 380-81* (finding government employees were protected by sovereign immunity because investigatory tasks completed by the employees were done at least in part "to serve the master" and therefore were within the scope of their employment); s*ee also Bansal v. Russ, 513 F. Supp. 2d 264, 284-5 (E.D. Pa. 2007)* (finding an employee at the Department of Justice was working "incidental to her master's business" by investigating and prosecuting the plaintiff, even if her motivation was only in part to serve her employer). Each Defendant is protected by sovereign immunity for the purpose of Shnipes's tortious interference with contract claim. *See Brumfield, 232 F.3d at 380-81.* Accordingly, Shnipes's tortious interference claim is **DISMISSED** with prejudice.[6]

---

[5] The complaint asserts Kosakevitch spoke to witness J.T. and pursued charges against Shnipes despite her knowledge of the non-prosecution agreement. (Doc. 1, ¶¶ 23-24). Pennsylvania courts consider "investigating a crime throughout the duration of alleged offenses, [to be] acting within the scope of [a State Trooper's] employment." *DeForte, 364 F. Supp. 3d at 487.* Likewise, the complaint does not plausibly allege facts to support Elo and Zezza were not acting "incidental to their master's business," throughout their investigation and prosecution of Shnipes on behalf of the Attorney General's office. (Doc. 1, ¶¶ 23, 24, 26); s*ee Bansal, 513 F. Supp. 2d at 284-85.* There are no facts in the complaint plausibly supplying their actions were not motivated "at least in part" by serving their employer, the Attorney General, even if they had a personal interest in aiding his political career. (Doc. 1, ¶ 85); s*ee Bansal, 513 F. Supp. 2d at 284-85.* Lastly, from the face of the complaint it is clear Shapiro was also working pursuant to his official duties when he chose to pursue charges against Shnipes despite his knowledge of the non-prosecution agreement, regardless of his motivation. (Doc. 1, ¶ 24); *Bansal, 513 F. Supp. 2d at 284-85.*

[6] To the extent Shnipes also asserts breach of contract, conspiracy, and false arrest claims, the Court notes that Shnipes has not responded to Defendants' motion to dismiss these claims. As such, they are deemed unopposed. *See Wen v. Willis, 117 F. Supp. 3d 673, 678 n.1 (E.D. Pa. 2015)* (deeming defendants' argument unopposed where plaintiff failed to respond to the argument in response to motion to dismiss). Further, these claims, like the tortious interference claim, are barred by sovereign immunity. *See Spangler v. Centers for*

F.   COUNT VI: DEFAMATION

Finally, Count VI asserts a defamation claim against Shapiro. (Doc. 1, ¶¶ 87-91). The statute of limitations for defamation is one year from when the alleged defamatory material is first published. 42 Pa. Stat. and Cons. Stat. § 5523(1); *In re Phila. Newspapers*, 690 F.3d 161, 174 (3d Cir. 2012). From the face of the complaint, it is readily apparent that the defamation claim based on Shapiro's statements made during the alleged February 14, 2018 press conference is untimely. (Doc. 1, ¶ 26); 42 Pa. Stat. and Cons. Stat. § 5523(1). The written press statement made after August 20, 2021 falls within the statute of limitations; thus the defamation claim based upon that statement is timely under 42 Pa. Stat. and Cons. Stat. § 5523(1). (Doc. 1, ¶ 36).

Parties disagree about whether Shapiro was acting in his official or individual capacity when he published the August 2021 written statement to the press. (Doc. 11, at 17-18; Doc. 17, at 22-25; Doc. 20, at 17-18).   If the written statement was made in Shapiro's official capacity, the defamation claim is barred. *See Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990), *aff'd*, 502 U.S. 21 (1991) (stating the Eleventh Amendment "bars a suit against state officials in their official capacity, because the state is the real party in interest inasmuch as the plaintiff seeks recovery from the state treasury."). Shnipes argues the statement was made in Shapiro's individual capacity because "[talking] to the press is, at best, only an administrative function."

---

*Medicare & Medicaid Servs.*, No. 1:18-CV-01297, 2019 WL 4194276, at *4 (M.D. Pa. Sept. 4, 2019) (dismissing a breach of contract claim barred by sovereign immunity); *Reuss v. Pennsylvania State Police*, No. 08CV0108, 2008 WL 897923, at *1 (W.D. Pa. Mar. 28, 2008) (dismissing a civil conspiracy claim barred by sovereign immunity); *Brazil v. Scranton Sch. Bd.*, No. 3:22-CV-01514, 2023 WL 5916470, at *16 (M.D. Pa. Sept. 11, 2023) (dismissing state law claim of false arrest because it was barred by sovereign immunity). Accordingly, these claims are **DISMISSED**.

14

(Doc. 17, at 22); *Schrob v. Catterson*, 948 F.2d 1402, 1420 (3d Cir. 1991). Further, Shnipes asserts that when the statement was made, the "prosecution was over and [the press release] was related to Shapiro['s] upcoming campaign for governor." (Doc. 17, at 22-23). Thus, "[the] statement was made outside the scope of Shapiro's official duties as Attorney General and [] was not related to an active or ongoing criminal case or conviction." (Doc. 1, ¶ 37). Defendants assert Shapiro retained immunity because the statement was made pursuant to and within the scope of his duties. (Doc. 11, at 17-18; Doc. 20, at 17-18).

Regardless of whether Shapiro made the statement in his official or individual capacity, in Pennsylvania, attorney generals receive an absolute immunity against defamation claims as "high public officials." *Lindner v. Mollan*, 677 A.2d 1194, 1198 (1996); *see also Flanagan v. Borough of Laflin*, No. 3:CV-13-2863, 2014 WL 1315400, at *11 (M.D. Pa. Mar. 28, 2014). "[H]igh public official immunity is an unlimited privilege that exempts high public officials from lawsuits for defamation provided the statements made by the official are made in the course of his official duties and within the scope of his authority." *Jackson v. Coatesville Area School District*, 2000 WL 1185375, at *8 (E.D. Pa. Aug. 21, 2000) (citing *Matta v. Burton*, 721 A.2d 1164, 1166 (Pa. Commw. Ct. 1998)). This protection extends regardless of the high public official's motivation in making the statement. *Flanagan*, 2014 WL 1315400, at *11.

While neither party addresses high public official immunity in their briefs, it is applicable in this case. (Doc. 11; Doc. 17; Doc. 20). Shnipes's complaint concedes Shapiro's written statement to the press was issued from the Office of the Attorney General. (Doc. 1, ¶ 36). The alleged defamatory statement reads, "[a]s a result of this agreement made 8 years ago, prior to a full investigation into Mr. Shnipes's criminal conduct, *our office* sees no way forward in achieving accountability for this defendant and justice for his victims." (emphasis

added) (Doc. 1, ¶ 36). Taking the factual allegations in the complaint as true, Shnipes does not have a plausible defamation claim against Shapiro, as he is a high public official and released the statement on behalf of his office. (Doc. 1, ¶¶ 36-37); *Flanagan*, 2014 WL 1315400, at *11 (dismissing defamation claims against the Attorney General by applying high public official immunity and stating, "[h]igh public official immunity applies even if the [alleged defamatory statement] was maliciously motivated as advocated by [the Attorney General]."). Accordingly, Shnipes's defamation claims against Shapiro are **DISMISSED** with prejudice.

## IV.   LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). The Third Circuit has also acknowledged that a district court has "substantial leeway in deciding whether to grant leave to amend." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000); *see also Ruffin v. Mooney*, No. 3:16-CV-1987, 2017 WL 3390361, at *2 (M.D. Pa. Jan. 31, 2017) (dismissing prisoner-plaintiff's case without prejudice where it was unclear whether he was seeking relief under § 1983 or a habeas statute). A district court is justified in denying leave to amend if amendment would be "inequitable or futile" or upon "[a] plaintiff's 'repeated failure to cure deficiencies by amendments previously allowed ....'" *Kitko v. Young*, 575 F. App'x 21, 27 (3d Cir. 2014) (quoting *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 217 (3d Cir. 2013); *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004)).

Here, the Court finds Shnipes's claims for malicious abuse of process and defamation are time-barred by the relevant statute of limitations. Shnipes's defamation claim, tortious interference with contract claim, breach of contract claim, conspiracy claim, false arrest claim,

16

claims against Defendants in their official capacities, and claims against the Commonwealth are all barred by immunity. Because these claims will dismissed with prejudice, amendment would be futile. *See Lambert v. Casteel*, No. 1:22-CV-01220, 2023 WL 4306762, at *7 (M.D. Pa. June 30, 2023) (acknowledging time-barred claims as futile in the context of a leave to amend); *see also Burton v. Wetzel*, No. 1:22-CV-1625, 2023 WL 5804324, at *3 (M.D. Pa. Sept. 7, 2023) (recognizing amendment to be futile for claims involving immunity). As such, the Court will not grant leave to amend.

## V.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part. (Doc. 6). All claims against the Commonwealth and Defendants in their official capacities are dismissed with prejudice. Defendants' motion to dismiss Counts I and III, Plaintiff's § 1983 and state law malicious prosecution claims is **DENIED.** Defendants' motion is granted as to all other counts and those claims are dismissed with prejudice. Finally, Defendants' motion to stay (Doc. 29) is **DENIED** as moot. The Court will issue a case management order setting forth pretrial deadlines separately.

An appropriate Order follows.

Dated: September 29, 2023

s/ Kardine Mehalchick

**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**